**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **MARIE SANTOLI, ET AL.,** | ) | **CASE NO. 1:12CV1022** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **VILLAGE OF WALTON HILLS,** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants Kevin Hurst, Sharon Szczepanski, Kenn Thellmann and Village of Walton Hills' Motion for Partial Summary Judgment on Claims asserted by Gary Rhines (ECF # 28). For the following reasons, the Court grants Defendants' Motion and dismisses Rhines' claims. Because the Court grants summary judgment for Defendant, no Reply brief is needed.

Plaintiffs' Second Amended Complaint ("SAC") alleges three claims by Gary Rhines against Defendants Village of Walton Hills and Mayor Kevin Hurst for Public Records Production, Public Records Destruction and Defamation. Rhines' factual allegations against the above Defendants are found in paragraphs 50-53 of Plaintiffs' SAC and read as follows:

50. Throughout this time frame, Plaintiff Rhines, supported Plaintiff Santoli's efforts by making multiple public records requests in an attempt to retrieve public records related to Ms. Santoli's and his own concerns about the activities of Walton Hills public officials.

51. Plaintiff Rhines hand delivered all the public records requests he made to Village Hall.

52. Defendant Village of Walton Hills responded to some but not all of Plaintiff Rhines public records requests.

53. On March 14, 2012, Defendant Kevin Hurst stated in a memo to Council President Linville about Plaintiff Rhines that "I have no choice but to follow-up with this ongoing issue with possible legal prosecution to try and stop this on going [sic] distraction to the operation of our villages [sic] everyday single day [sic]. This must come to a stop sooner than latter [sic]."

According to Defendants, Plaintiff's claims fail for several reasons.  First, Plaintiff's Public Records claim fails because Ohio Revised Code Section 149.43(C)(1) requires a party seeking public records first petition for a Writ of Mandamus which Plaintiff failed to do. Second, Plaintiff's Public Records Production claim fails because all requests were, in fact, addressed.

Defendants further contend Plaintiff's Public Records Destruction claim fails because the documents destroyed - i.e the Mayor's personal calendar and a personal letter of Defendant Szczepanski - were not public records.  Furthermore, no disciplinary records in Defendant Thellmann's personnel file were ever destroyed.

Lastly, Plaintiff's Defamation claim fails because the alleged defamatory statements were not false and Defendants are immune under Ohio Revised Code Section 2744.

Plaintiff responds that Defendants failed to produce the requested records but states he intends to file a motion to amend to include a Petition for Writ of Mandamus.

## LAW AND ANALYSIS

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n*., 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

3

**Production of Documents Under O.R.C. § 149.43**

Plaintiff seeks full compliance and production with records he requested from June 2011 through March 2012.  O.R.C. § 149.43 Ohio's Public Records Act codifies the "fundamental policy of promoting open government, not restricting it." *State ex rel. The Miami Student v. Miami Univ.,* 79 Ohio St.3d 168, 171, 680 N.E.2d 956 (1997).  "Under the Act, any record kept by a governmental unit must be made available for inspection by the general public, unless specifically exempted or prohibited from release by state or federal law."  *Smith v. City of Dayton*, Ohio 68 F.Supp.2d 911, 916 (S.D.Ohio,1999).  "Consistent with this policy, Ohio courts construe public records law liberally to favor broad access and resolve any doubt in favor of disclosure of public records." *State ex rel. Perrea v. Cincinnati Pub. Schools,* 123 Ohio St.3d 410 (Ohio 2009).

O.R.C. § 149.43 establishes that:

> (C)(1) If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section. The mandamus action may be commenced in the court of common pleas of the county in which division (B) of this section allegedly was not complied with, in the supreme court pursuant to its original jurisdiction under Section 2 of Article IV, Ohio Constitution, or in the court of appeals for the appellate district in which division (B) of this section allegedly was not complied with pursuant to its original jurisdiction under Section 3 of Article IV, Ohio Constitution.

"Mandamus will lie and is indeed the appropriate remedy to compel a public office to disclose

4

records." *Smith,* at 916.   Plaintiff does not dispute that his remedy against Defendants to compel them to produce the desired public records must come via a Petition for Writ of Mandamus.  Therefore, Defendants are entitled to summary judgment on Plaintiff's Public Records Production claim under Ohio law because Plaintiff has not sought the records through such a petition.

## Public Record Destruction

### Mayor Hurst's appointment calendar

Plaintiff's Public Record Destruction claim alleges that on July 15, 2011, Mayor Hurst represented to Plaintiff that Hurst's appointment calendar, requested by Plaintiff in a Public Records request, was destroyed.  Defendants cite to Hurst's declaration that he did not destroy his appointment calendar regarding official business; rather, he disposed of his personal appointment calendar.  According to Defendant, no one in the office had access to the Mayor's personal appointment calendar.  Defendants cite to *International Union, United Auto., Aerospace & Agricultural Implement Workers of America v. Voinovich*, 100 Ohio App.3d 372, 376 (10th Dist 1995), wherein the Court held the Governor's personal appointment book was not a public record subject to production under the Public Records Act.  Plaintiff does not dispute this and offers no argument challenging Hurst's declaration. Hurst further represents that he did provide his official appointment calendar to Plaintiff. Therefore, on the authority of *International Union* and the unrefuted declaration of Hurst, the Court grants summary judgment for Defendants on Plaintiff's claim for Public Record Destruction as it relates to Hurst's personal appointment calendar.

5

### The Szczepanski letter

According to Plaintiff's SAC, on August 21, 2011, Plaintiff requested via Public Records Request, a letter from Sharon Szczepanski regarding Plaintiffs Rhines and Santoli. Rhines followed up with his request for the letter on September 14, 2011.  The August 21, 2011 request by Rhines reads:

> letter from Sharon Szczepanski regarding Chief Gary Rhines and Marie Santoli concerning CBA and/or Union to where as it was stated some or all dispatchers did not wish to join the Union/CBA. Since this letter was shown to all of council and was written in the communications center/police department, this document is now "Public Record.'

That same day  Hurst responded that the letter was not retained.  Defendants argue that the letter was a personal note that does not qualify as a public record.  In his declaration at paragraph 5, Hurst states, "

> Mr. Rhines made a request dated August 21,2011, for a document that Sharon Szczepanski read out-loud to an executive session of the VIllage of Walton Hills' Council. That document was not retained by any public official. We have always considered it a personal note that Ms. Szczepanski used as a primer for her speech made during the executive session and was never considered a public record.

Plaintiff argues in his Opposition brief that if the request is denied, the requester must be provided an explanation why the request was denied.  According to Plaintiff, Hurst provided no exception to justify non-production of the public record.  However, Hurst declares he provided a response to Rhines in writing on September 14, 2011, wherein he informed Rhines that the letter was read in executive session and was not available to anyone not present at the meeting.  Hurst attached the September 14, 2011 letter to his Motion for Summary Judgment as an exhibit.

6

Ohio Revised Code Section 149.351 prohibits the destruction of public records except as provided by law. It reads in pertinent part:

> (A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education under section 149.33 of the Revised Code. Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

O.R.C. § 149.011 defines a public record as:

> (G) "Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

In *Kish v. Akron*, 109 Ohio St.3d 162, 163 (Ohio,2006), the Ohio Supreme Court interpreted the terms "record" and "violation" found in O.R.C. § 149.351 and § 149.011 as follows:

> We hold that "record," as used in R.C. 149.351 and defined in R.C. 149.011, may be a single document within a larger file of documents as well as a compilation of documents, and can be any document, regardless of physical form or characteristic, whether in draft, compiled, raw, or refined form, that is created or received or used by a public office or official in the organization, functions, policies, decisions, procedures, operations, or other activities of the office. Having reached that conclusion, we further hold that "violation," as that term is used in R.C. 149.351(B), means any attempted or actual removal, mutilation, destruction, or transfer of or damage to a public record that is not permitted by law.

Before the Court is the unrefuted declaration of Hurst that the Szczepanski letter was a

7

personal note read into an Executive Session.  Under the *International Union* case, personal notes are not Public Records.  See *International Union* 100 Ohio App.3d at 376.  Therefore, according to Defendants, it is not a public record and need not be preserved or produced.  In response, Plaintiff points the Court to no evidence challenging Defendants' evidence that the letter was a public record.   Plaintiff argues instead that Defendants failed to comply with the particular procedural requirements of O.R.C. § 149.43(B)(3) which reads:

> If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied. If the initial request was provided in writing, the explanation also shall be provided to the requester in writing. The explanation shall not preclude the public office or the person responsible for the requested public record from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section.

According to Plaintiff, Hurst failed to explain why the letter was not produced and failed to provide legal authority supporting his position that the letter was not a public record. Plaintiff requests the Mayor either produce the letter or provide such an explanation supported by legal authority.

The Court holds that Defendants have produced an explanation supported by evidence and have provided the only evidence before the Court on the nature of the letter.  Therefore, they are entitled to summary judgment and the Court so grants.

**Thellmann Disciplinary Records**

According to Plaintiff's SAC, on September 13, 2011, he requested the disciplinary records relating to Police Chief Thellmann.  On October 31, 2011, Mayor Hurst responded that no disciplinary letters or records remain in Chief Thellmann's file.

8

Defendants move for summary judgment on this claim, contending that the alleged "disciplinary records" requested by Plaintiff did not belong in the file because they were not disciplinary records but were notes indicating Plaintiff's belief that Thellmann was not complying with hyper-technical protocols.   Furthermore, Defendants argue there is no evidence the requested records were destroyed, therefore, Defendants are entitled to summary judgment on this claim.

Plaintiff Rhines responds that he was the Police Chief of Walton Hills.  While serving as police chief, Rhines supervised Thellmann, who was a lieutenant at that time.  Rhines created the alleged disciplinary documents and determined which ones should be maintained in his subordinates' files.  Rhines argues Hurst lacked the authority to determine what disciplinary records should be maintained in the files since he was not mayor when the documents were created.

Having reviewed the briefs on this issue and supporting evidence, the Court grants summary judgment for Defendants on Plaintiff's claim for destruction of public records on Thellmann's disciplinary records.  There is no evidence before the Court cited by Plaintiff demonstrating that the records in question were destroyed.  Hurst's declaration indicates that the requested disciplinary documents were withheld from production because Mayor Hurst did not consider them public records, but no evidence suggests they were destroyed. Therefore, the appropriate avenue to compel the production of these documents is via a writ of mandamus.[1]

---

[1]      O.R.C. § 149.351 permits recovery for the removal of public records as well as for the destruction, mutilation or transfer of the documents.  However, Plaintiff's Second Amended Complaint only alleges destruction of the documents.

**<u>Defamation</u>**

Plaintiff further alleges Defendants defamed him.  The SAC provides no details how this was accomplished or what act constituted defamation, nor does it point to any false statement made by Defendants.

Hurst argues Plaintiff's defamation claim fails as a matter of law because there is no false statement alleged.  Furthermore, Walton Hills is immune under O.R.C. § 2744, which immunizes political subdivisions.  Hurst, as an employee of Walton Hills, is also immune subject to certain exceptions.

In Ohio, the elements of a defamation claim are as follows:  "First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault."  *Celebrezze v. Dayton Newspapers, Inc.,* 41 Ohio App. 3d 343, 347 (1988).

Plaintiff has not alleged facts that give rise to a federal defamation claim. The Supreme Court stated a federal defamation claim requires that "[the] defamation had to occur during the course of the termination of employment." *Paul v. Davis*, 424 U.S. 693, 710 (1976).  "Absent a further inquiry, such as loss of a government job or loss of a legal right or status, defamation, by itself, does not constitute a remediable constitutional claim."*Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (2005) (citing *Paul v. Davis*, 424 U.S. at 701-03). Therefore, Plaintiff's defamation claim can only be brought under Ohio Law.

*Article 1, Section 11 of the Ohio Constitution* guarantees every citizen the right to publish freely his or her sentiments on all subjects. *Wampler v. Higgins*, 93 Ohio St. 3d 111 (2001).

Having reviewed the arguments for and against summary judgment, the Court finds Plaintiff's  Defamation claim fails for a number of reasons.  First, Plaintiff's SAC Defamation claim consists of the following two paragraphs:

> 80. Plaintiff Rhines re-alleges and incorporates by reference each and every material allegation set forth in each preceding paragraph of the Complaint as if fully re-written herein.
> 81. Defendant Hurst's acts and omissions regarding Plaintiff Rhines constitute the tort of defamation.

The only factual allegations arguably supporting a Defamation claim are found in paragraph 53 of the SAC which simply recounts:

> 53. On March 14, 2012, Defendant Kevin Hurst stated in a memo to Council President Linville about Plaintiff Rhines that "I have no choice but to follow-up with this ongoing issue with possible legal prosecution to try and stop this on going [sic] distraction to the operation of our villages [sic] everyday single day [sic]. This must come to a stop sooner than latter [sic]."

Plaintiff's Defamation claim is entirely a conclusory allegation that merely alleges a defamation occurred and is devoid of any facts supporting the claim.  In fact, Plaintiff does not even allege the elements of a defamation claim and never alleges a false statement was made.  A defamation claim must assert a false statement of fact.  Plaintiff's SAC fails to allege this most basic of allegations.  The Court and Defendants must speculate what statement allegedly defamed Plaintiff.  Even if the Court and Defendant were to assume the defamatory statement was the Memo from Hurst to Council President Linville, the Second Amended Complaint is entirely silent as to what portion of the memo was false.  In fact, the

11

Second Amended Complaint never alleges a false statement was made.  This failure alone merits dismissal.

However, even if the Court were to permit such a bare bones claim to proceed on the assumption that the SAC alleges a legally cognizable claim for defamation, Plaintiff cannot show a false statement.  Plaintiff argues in his Opposition brief that by using the phrase "legal prosecution" Hurst is implying Rhines committed a crime.  When analyzing this statement there is no specific crime alleged by Hurst in the statement.  Instead, it merely posits Hurst may seek "possible legal prosecution" due to "on going" [sic] "distraction" to the operation of the village.   Such a term expressly connotes that whatever the implied conduct is, it may or may not warrant legal prosecution.  Thus, there is no false statement made because no allegation of criminal activity is alleged.  In fact, the memo in the line preceding this statement reads, "I have handed all this information over to Mr. John Montello to handle."  In a March 11, 2012 letter from Rhines to Montello, Montello is described as law director or prosecutor for Walton Hills.  In this context it is clear that Hurst's memo places the decision to determine if legal prosecution should proceed properly with Walton Hill's prosecutor.

Furthermore, even if the Court were to consider the language used as conveying to the ordinary reader some implication of criminal conduct, courts must "examine the totality of the circumstances in order to determine whether a published statement constitutes an opinion protected by the Ohio Constitution.  Consideration of the totality of [the] circumstances involves at least four factors.  First is the specific language used, second is whether  the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared."  *Wampler v. Higgins* 93 Ohio St.3d 111, 122, 126

(Ohio,2001).

This analysis applies to non-media defendants as is the case with the Defendants here. "Indeed, in *Scott,* this court noted that "[e]xpressions of opinion are generally accorded absolute immunity from liability under the First Amendment" without qualification based on the status of the defendant." *Id* at 973

Applying the above four factor test further supports dismissal.  Hurst's specific use of the term "possible" legal prosecution does not support an actionable accusation of criminal conduct.  The memo further places the decision in the hands of Montello to determine the issue.  This also goes to the second element whether the statement is verifiable.  Because there is no specific accusation of criminal conduct, only conduct possibly supporting legal prosecution, the determination of which was to be handled by the prosecutor, compels the Court to conclude this is an opinion protected by the Ohio Constitution.  Hurst simply states he is turning the issue over to Montello to handle because Rhines is distracting the operation of the village.  Hurst makes no conclusion that the distraction is criminal.  The general context and broader context concern the village's operations and issues in having to respond to the large numbers of requests by Rhines.  Hurst would be in the unique position of determining what manpower and energy were expended to comply with Rhines' requests and its impact on the Village's operation.  By referring the matter to the prosecutor, for possible legal prosecution, no conclusion of criminal conduct other than Hurst's opinion can be read into the statement.  Therefore, even under the opinion/fact analysis, Plaintiff cannot show defamation.

Finally, even if there were an actionable defamatory statement, Plaintiff would have to

show malice.  Malice is defeated by Plaintiff's own admission in his opposition brief that "Hurst took action ***he believed he had a right to take*** and merely announced this to the Village Council, defaming Rhines in the process." (Brief in Opposition pg. 9)(emphasis added).  By conceding Hurst took the action he "believed he had the right to take" Plaintiff cannot show Hurst acted with actual malice and Defendants are entitled to summary judgment on the defamation claim.

Therefore, for the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment on the claims of Plaintiff Gary Rhines.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  March 18, 2014