# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARIE SANTOLI, ET AL.,** | ) | **CASE NO. 1:12CV1022** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **VILLAGE OF WALTON HILLS,** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendants' Motion for Summary Judgment on the Claims Asserted Against Them by Plaintiff Marie Santoli (ECF # 37).   For the following reasons, Defendants' Motion is granted, in part, and the remaining state law claims are remanded to the Cuyahoga County Court of Common Pleas for further adjudication.

Plaintiff Marie Santoli filed her Second Amended Complaint on October 19, 2012.  In her Second Amended Complaint, Santoli alleges that on March 16, 2001, she began working part-time for Defendant Village of Walton Hills ("Walton Hills").  On January 5, 2003, Santoli was offered a full-time position as a Dispatcher which she accepted.  Her job duties expanded over time to include work as the Mayor's Clerk of Court, Record Custodian and Assistant to the Police Chief.  She eventually left her Dispatcher position.

On January 1, 2011, Defendant Kevin Hurst ("Hurst") became Mayor of Walton Hills. At this time, Santoli was actively communicating with the local chapter of the Fraternal Order of Police ("FOP") in her capacity as representative of the Dispatchers and as Clerk of Courts.  Also, at this time, Walton Hills' officials were made aware that the Mayor's Clerk of Court position

was subject to the safety personnel collective bargaining agreement.  Walton Hills retained legal counsel to determine whether the Clerk of Court position was indeed subject to the collective bargaining agreement and counsel agreed that it was.  Thereafter, Santoli alleges Defendants Walton Hills, Hurst and Kenn Thellmann ("Thellman") interfered with Santoli's union activity by directly communicating with the FOP and actively discouraged collective bargaining agreement discussions.  In May of 2011, Hurst requested Santoli be removed as Clerk of Court and in June of 2011 Walton Hills, Hurst and Thellmann changed Santoli's job duties and/or job title from Clerk of Court to dispatcher.

On September 8, 2011, Santoli requested a leave of absence under the Family Medical Leave Act ("FMLA") to care for an ill family member.  Santoli began her FMLA leave on September 21, 2011.  During her FMLA leave, Defendants hired an investigator to determine if her FMLA use was legitimate.  This investigation included survelliance of Santoli's home, her ill family member's home and following Santoli.  Also, on December 3, 2011, an audit report alleged Santoli had made a number of errors as Clerk of Court.  Santoli was disciplined for these errors even though she was no longer Clerk of Court.  Santoli alleges these errors were made by other employees.  Ultimately, Santoli received a written reprimand and a reduction in pay.

Santoli's Second Amended Complaint alleges claims for FMLA Interference, FMLA Retaliation, and state law claims for Negligent Retention and Supervision, Invasion of Privacy under Ohio common law, Intentional Infliction of Emotional Distress and Constructive Discharge.

Defendants move for summary judgment on all Plaintiff's claims.  According to Defendants, Santoli requested and received all benefits to which she was entitled under the

FMLA, therefore, she cannot prevail on her FMLA Interference claim.  Defendants further allege Santoli cannot prevail on her FMLA Retaliation claim because Defendants had legitimate, non-retaliatory business reasons for holding disciplinary hearings, reducing her wages and giving her a lower performance evaluation.

Defendants further contend Santoli's FMLA claims against the individually named Defendants must be dismissed because employees of public agencies cannot be liable under FMLA.  Defendants also argue that Santoli's state law claims, premised on FMLA violations are preempted by federal law and must be dismissed.  Furthermore, because the FMLA only delineates certain damages, Defendants argue the Court should dismiss all Santoli's damages claims for damages outside those permitted by statute.

Defendants next argue that Walton Hills is entitled to summary judgment on Plaintiff's state law claims because Walton Hills is entitled to immunity under Ohio Revised Code  § 2744. For the same reason, Defendants assert individual named Defendants are entitled to immunity for Plaintiff's state law claims.

Finally, Defendants move for summary judgment on Plaintiff's state law Negligent Retention, Invasion of Privacy, Intentional Infliction of Emotional Distress and Constructive Discharge claims as a matter of law.

## LAW AND ANALYSIS

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue

of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**FMLA Interference**

According to Plaintiff's Second Amended Complaint, Defendants interfered with her FMLA rights by:

- failing to adequately post, notify and or publish her rights under the FMLA in a timely manner;

- improperly causing a private investigator of Walton Hills employees to follow, harass

or otherwise intimidate Santoli and her ill family member while she was on leave;

- improperly interfering with her rights;

- failure to comply with applicable FMLA regulations.

Under the FMLA, an employer may not "interfere with, restrain or deny the exercise of or attempt to exercise, any [FMLA] right provided." 29 U.S.C. § 2615(a)(1); *Hoge v. Honda of Am. Mfg.,* 384 F.3d 238, 244 (6th Cir.2004).  "To prevail under the interference theory, the employee must establish the following:  (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007) quoting *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir.2003). Interfering with the exercise of an employee's rights under the FMLA includes "discouraging an employee from using [FMLA] leave." *Arban v. West Publishing Corp.,* 345 F.3d 390, 402 (6th Cir. 2003) quoting 29 C.F.R. § 825.220(b).

Furthermore, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace v. USCAR,* 521 F.3d 655, 670 (6th Cir. 2008)citing *Arban v. West Publ'g Corp.,* 345 F.3d 390, 401 (6th Cir.2003).  "If the defendant proffers such a justification, then the plaintiff may seek to rebut it by a preponderance of the evidence."*Grace,* at 670 *citing Arban,* at 401. "Specifically, a plaintiff can 'refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the

5

proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.' " *Grace* at 670 quoting *Wexler v. White's Fine Furniture,* 317 F.3d 564, 576 (6th Cir.2003).

The parties do not dispute that Santoli has satisfied the first four elements of an FMLA interference claim.  Defendants reserve their arguments for element five, contending Santoli cannot establish that she was deprived of any benefit under FMLA.

Santoli contends Defendants interfered with her FMLA rights by failing to provide notice as required under the law.  While she concedes the employee handbook provided general information she contends she was never provided the requisite information within five business days when she informed Defendants in September 2011 that she needed to take leave.

"When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days[.]" 29 C.F.R. § 825.300(b)(1).  "Failure to follow the notice requirements set forth in [§ 825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).  But "[a]n employer's failure to comply with the notice requirements of the FMLA only supports a cause of action where 'the inadequate notice effectively interfere[s] with plaintiff's statutory rights.' " *Callaway v. Academy of Flint Charter School* 904 F.Supp.2d 657, 666 (E.D.Mich.,2012) quoting *Fink v. Ohio Health Corp.,* 139 Fed.Appx. 667, 671 (6th Cir.2005).  See also *Kitts v. General Telephone North, Inc.*, No. 2:04CV173, 2005 WL 2277438 * 9 (S.D. Ohio Sept. 19, 2005) ( An employer's failure to provide an employee adequate notice of FMLA rights may give rise to a claim of interference

6

but only if such a failure causes Plaintiff to be denied benefits to which she was entitled.")

Here, there appears to be an issue of fact whether Defendants timely provided notice of Plaintiff's FMLA rights within five days of the request.  Defendants only point the Court to correspondence made in December 2011, months after Plaintiff contends she requested FMLA leave.  However, Plaintiff has failed to show Defendants failure "effectively interfered with her statutory rights because she admits she received the FMLA leave she requested.  In her deposition Santoli was asked:

Q: Have you ever reviewed the matter and come to the conclusion that you were in any way deprived of any FMLA rights you were entitled to?

A: Not that I can think of right now.

(Santoli depo. Pg. 73).

Santoli has not established that she was denied any rights under the FMLA to which she was entitled.  She requested FMLA leave and was granted it.

Santoli next contends her FMLA rights were interfered with when Defendants hired a private investigator to follow her to ensure she was legitimately using her FMLA leave.  According to Santoli, such an investigation interferes with her FMLA rights because it has a chilling effect and the investigation, which was based on unsubstantiated rumors, was meant to harass and intimidate Santoli and discourage her use of FMLA leave.

Defendants cite to case law within this District holding that an employer who investigates allegations of abuse of FMLA leave does not violate the FMLA.  In *Rush v. DuPont Denemours and Company,* 911 F. Supp.2d 545, 562 (S.D. Ohio 2012) the Court held,  "Indeed, '[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not

7

abuse their leave.'" *citing Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 281 (6th Cir.2012). The court in *Rush* determined that Plaintiff offered no legal support for its position that an investigation of FMLA abuse constituted FMLA interference. Ultimately, citing *Kitts,* the *Rush* court held "[a]ccordingly, nothing in the FMLA prohibits an employer from investigating allegations of dishonesty..." *Rush*, 911 F. Supp.2d at 562.

This Court agrees with the Southern District of Ohio and finds Plaintiff has not established that an investigation of FMLA use constitutes FMLA interference. Although Plaintiff contends such an investigation may have the effect of chilling FMLA use, Santoli does not offer evidence that it, in fact, caused her or any other employee to refrain from requesting or using FMLA leave. Nor has she produced any caselaw challenging the Southern District of Ohio's conclusions that investigations of FMLA use do not constitute FMLA interference.

Therefore, because Plaintiff admits she received all FMLA benefits to which she was entitled and in the absence of evidence that Defendants acts discouraged Plaintiff or others from exercising their rights under the FMLA, the Court finds Defendants are entitled to summary judgment on Santoli's claim of FMLA interference.

**FMLA Retaliation**

In her Second Amended Complaint, Santoli alleges Defendants improperly retaliated against her for exercising her FMLA rights by: issuing reprimands, denying her contractual right to a shift change, holding a pre-disciplinary hearing, and reducing her wages. (Second Amended Complaint at ¶s 63-64).

"The FMLA prohibits an employer from retaliating against an employee who takes leave under the FMLA." *Judge v. Landscape Forms, Inc.,* No. 14-1362, 2014 WL 6610470, 5 (6th

8

Cir. Nov. 21, 2014) *citing Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 508 (6th Cir.2006). "To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, i.e. notifying the defendant of her intent to take leave under the FMLA; (2) she suffered an adverse employment action[;] and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Judge*, at \*5. " If a plaintiff's claim is based on circumstantial evidence, *McDonnell Douglas Corp. v. Green* 's burden-shifting analysis applies." *Id.* citing  411 U.S. 792 (1973); *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir.2001).  "The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff." *Judge*, at \*5 citing *McDonnell Douglas,* 411 U.S. at 802–04.  "The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination."  *Judge*, at \*5 *citing Skrjanc,* 272 F.3d at 315.

Because there is no direct evidence of FMLA retaliation, the Court will analyze under the *McDonnell* burden-shifting test.

There is no dispute Santoli requested and took FMLA leave, therefore, she has met the protected activity element.

Defendants contend Santoli cannot show an adverse employment action because she voluntarily left her employment with Walton Hills.  An adverse employment action is an action that causes a "materially adverse change in the terms and conditions of [plaintiff['s]] employment." *McMillian v. Potter,* 130 Fed. Appx. 793, 796 (6th Cir.2005).  "In contrast, 'reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.'" *Id.* quoting *Kocsis v. Multi-Care*

9

*Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir.1996).  "Such reassignments may be considered adverse

employment actions, however, if they function as a demotion, evidenced by "a less distinguished

title, a material loss of benefits, significantly diminished material responsibilities, or other

indices that might be unique to a particular situation.'" *McMillian,* at 796-97 quoting *Kocsis* at

886.

Adverse employment actions "include demotions, reductions in salary or job

responsibilities, offers of early retirement or continued employment on terms less favorable than

the employee's former status, and harassment by the employer calculated to encourage the

employee's resignation." *Mueller v. J.P. Morgan Chase & Co.*, No. 1:05CV 560, 2007 WL

915160, *16 (N.D.Ohio, March 23, 2007) quoting *Weigold v. ABC Appliance Co.,* 105 Fed.

Appx. 702, 708 (6th Cir.2004).

Defendants make a blanket assertion that voluntary resignation bars Santoli's FMLA

retaliation claim.  Defendants cite to the cases of *Hammon v. DHL Airways, Inc.,* 165 F.3d 441,

447 (6th Cir.1999) and *Pownall v. City of Perrysburg*, 63 Fed.Appx. 819, 822-23, 2003 WL

1870912, *3 (6th Cir.2003) as authority supporting their position.  However, Santoli's Second

Amended Complaint does not allege that her resignation/constructive discharge was in

retaliation for her exercising her FMLA rights.  While she alleges a separate state law cause of

action for Constructive Discharge, her FMLA retaliation claim alleges the retaliatory conduct

was the reprimands, denying her contractual right to a shift change, holding a pre-disciplinary

hearing, and reducing her wages. (Second Amended Complaint at ¶s 63-64).  In *Hammon* and

*Pownall*, the plaintiffs in both cases claimed wrongful discharge as the adverse employment

action, which is not the case here.  Therefore, Defendants' argument and supporting caselaw are

10

inapplicable to the claims in this case. However, even if the Court were to construe the Second Amended Complaint as alleging constructive discharge as an adverse employment action under the FMLA, for the following reasons Santoli's claims would still fail.

Santoli has alleged a salary reduction that occurred approximately two weeks after she returned from her FMLA leave was an adverse employment action causally related to her taking FMLA leave. She also contends that within a month of her return from FMLA leave she was subjected to her lowest performance review, a pre-disciplinary hearing and a written reprimand. As the Sixth Circuit held in *McMillian*, an adverse employment action includes any act that materially adversely changes the terms and conditions of the work environment. This includes salary reductions. Therefore, Santoli has shown an adverse employment action. Furthermore, FMLA regulation 29 C.F.R. § 825.220(c), which states that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions ...." See also *Hunter v. Valley View Local Schools* 579 F.3d 688, 690 -691 (6th Cir. 2009). Here, Santoli can show a lower performance review, a pre-disciplinary hearing and a wage reduction, all of which occurred within thirty days of her returning from FMLA leave.

In its most recent pronouncement, the Sixth Circuit has held that close proximity alone is sufficient to establish a prima facie case of FMLA retaliation.[1] In *Judge,* the Sixth Circuit affirmed a District Court's finding that Plaintiff established a prima facie claim for FMLA

---

[1]      On this issue, the Sixth Circuit has previously held that temporal proximity alone is insufficient to establish a prima facie causal connection. See *Cutcher v. Kmart Corp.* 364 Fed Appx. 183, (6th Cir. 2010). While the guiding precedent of the Sixth Circuit is clear as mud on this issue, the Court is compelled to follow the most recent holding.

Retaliation by showing his adverse employment action occurred two months after taking FMLA leave.  Id. at *5.  The Sixth Circuit, citing to *Seeger v. Cincinnati Bell Telephone Co.*, 681, F.3d 274, 283-84 (6th Cir. 2012) stated "[w]e have held that the causal connection between the protected activity and the adverse employment action necessary for a prima facie case of retaliation can be established solely on the basis of close temporal proximity."  In *Judge*, the Sixth Circuit held that a period of two to three months between the expiration of an employee's FMLA leave and the adverse employment action was sufficiently close to establish the causal connection.  Here, the adverse employment occurred within one month of Santoli's return from FMLA leave therefore, Santoli has met her burden to show a prima facie claim of FMLA retaliation.

The burden now shifts to Defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action.  According to Defendants, Santoli's lower evaluation and pre-disciplinary hearing were based on legitimate, non-retaliatory reasons unrelated to her FMLA leave.  First, Santoli made a number of errors after she was transferred back to dispatch but before she requested FMLA leave.  These are reflected in documents attached to Sczepanski's declaration.  Several date to June and July 2011, before Santoli requested FMLA leave.  Thus, Defendants can show Santoli was notified of several dispatch errors before her FMLA leave.  Defendants also attach reprimand letters to other employees for similar dispatch errors.  Therefore, Defendants allege a non-retaliatory reason for the performance reviews and pre-disciplinary hearing.

According to Defendants, Santoli was transferred to Dispatch in mid 2011, well before she requested FMLA leave.  At that time, according to the affidavit of Defendant Hurst,  Santoli

12

was making $23.36 an hour as Clerk of Court.  The Chief Dispatcher was making approximately $21.23 an hour.   Therefore, beginning in 2012, Defendants contend Santoli's pay rate was lowered to be one dollar an hour less than her supervisor.  Defendants waited until 2012 to make the pay rate change because this was the time when the new budget went into effect and it was easier to make the pay rate change administratively.  Therefore, the pay rate decrease was not related to Santoli's FMLA leave but was implemented so that Santoli would be paid less than her supervisor.

Defendants further contend Santoli was denied a shift change because other dispatchers had more experience than she did.  This reason was conveyed to Santoli through letters between Santoli and Chief Thellmann.  Therefore, Defendants argue that they had a legitimate, non-retaliatory reason for denying Santoli a shift change.

The Court finds Defendants have carried their burden to articulate a non-retaliatory legitimate reason for the adverse employment actions, therefore, the burden now shifts to Plaintiff to show these reasons were mere pretext.

Santoli must "produce evidence that either the proffered reason: (1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action."  *Crawford v. JP Morgan Chase & Co.* 531 Fed.Appx. 622, 629 (6th Cir. 2013) *citing Ladd v. Grand Trunk W. R.R., Inc.,* 552 F.3d 495, 502 (6th Cir.2009).

As the Sixth Circuit in *Judge* held, while close temporal proximity is sufficient to show a causal connection at the prima facie stage, temporal proximity alone is insufficient to show pretext. *Judge*, at *7.  Plaintiff must offer some evidence to show pretext.   A review of Santoli's evidence shows she can demonstrate pretext.  She can show the proffered reasons for her salary

13

reduction, failure to move to a daytime shift, post FMLA discipline and alleged constructive discharge all were not actually motivated by legitimate business reasons. The problem is her evidence shows an entirely different motive, wholly unrelated to her FMLA leave.

Santoli cites to and relies on, in part, the affidavit of Annastacia Williams. Williams was the Clerk of Court for Walton Hills from January 17, 2012 to March 4, 2014. (Williams Aff. # 2). Defendant Hurst became Mayor of Walton Hills on January 3, 2011. (Hurst aff. #2). According to Williams, prior to his taking the Oath of Office to be Mayor, Hurst told Williams he wanted her to work for the Village of Walton Hills and that there were some employees of the Village of Walton Hills that were out to get him and did not have his back. (Williams aff. # 8-9). Williams attests that "Hurst explained it may take a while to figure out how to get me hired, indicting he needed to remove a current employee." (*Id.* at 11). Plaintiff alleges "Hurst knew it would take a lot to get Marie to leave voluntarily or be terminated." (Plaintiff's Response pg. 2). Thus, in construing the evidence most favorably for Plaintiff, there can be no dispute that Defendants motive in taking all its adverse employment actions were not related to her taking FMLA leave. The motive to force Santoli out existed long before Plaintiff ever requested FMLA leave. By Plaintiff's own evidence, Hurst wanted her out even before he took office because Santoli was "out to get him" and because he wanted employees who "had his back." Williams further supports this non-FMLA related retaliatory motive when she says Hurst told her Santoli was out to get him. (Williams aff. #21); Hurst wanted her to quit and putting her on third shift was his way of doing so. (*Id.* at 23). The way to get rid of employees was to paper their files and pay attention to typical mistakes to build a disciplinary record. (*Id*. at 29-30). All of this

evidences a motive entirely unrelated to Santoli's taking FMLA leave.[2]  Other than the temporal proximity, which is insufficient to show pretext, Plaintiff has offered no evidence demonstrating the adverse actions taken by Defendants were related to her FMLA leave.  Instead, Plaintiff's own evidence shows a pretextual motive entirely unrelated to Santoli's FMLA leave.[3]  In short, Plaintiff's evidence shows Defendants wanted to remove Santoli in early 2011 when Hurst took office. Hurst believed, even before he took office and at least nine months before Santoli ever requested FMLA leave, that Santoli was out to get him.  Thus, Williams affidavit, offered by Santoli to support her claims, provides a non-FMLA related motive for Defendants' adverse employment actions.  Defendants dispute this evidence and the Court makes no findings on the matter.  Rather, the Court merely finds that Santoli's own evidence contradicts her claim for FMLA Retaliation and fails to support any conclusion that the adverse actions taken against Santoli were FMLA related.  Instead, Plaintiff's evidence establishes a motive to remove Santoli long before she took FMLA leave.  The evidence supports such a motive because Santoli was removed from her Clerk of Court position before she requested FMLA leave and was returned to dispatch.[4]  Both these actions support Williams' affidavit that Hurst intended these moves to

---

[2]     Statements of a party opponent are not hearsay.  Fed R. Evid. 801(d)(2).

[3]     Defendants ask the Court to strike hearsay and contradictory portions of Santoli's and William's affidavits without identifying which portions.  Furthermore, the request to strike was not found in a separate motion but was instead contained in the body of Defendants' Reply brief.  The Court finds the request to strike is not properly before the Court.

[4]     In her Response Plaintiff argues for the first time a mixed motive claim that is unsupported by any allegation in her Second Amended Complaint.  The Court finds that Plaintiff has not alleged such a claim in her Second Amended Complaint.  However, even if the Court were to consider such an argument there is no evidence in the record that her FMLA leave was a motivating factor for the adverse employment actions.

force Santoli to quit.

Having disposed of the federal claims in this matter, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims.  See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Therefore, for the foregoing reasons, the Court grants Defendants Motion for Summary Judgment on Plaintiff's FMLA Interference and FMLA Retaliation claims and remands Plaintiff's remaining state law claims back to the Cuyahoga County Court of Common Pleas for further adjudication.

IT IS SO ORDERED.

   S:/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge